█ In the Matter of the Claim of SHIRLEY ARROYO, Respondent. DRY HARBOR NURSING HOME, Appellant; THOMAS F. HARTNETT, as Commissioner of Labor, Respondent.—Harvey, J. Appeal from a decision of the Unemployment Insurance Appeal Board, filed August 13, 1987, which ruled that claimant was entitled to receive unemployment insurance benefits.

Claimant was employed for over 1½ years as a nurse's aide at Dry Harbor Nursing Home. Claimant's employment was terminated on February 19, 1986 as a result of an incident occurring during claimant's 11:00 P.M. to 7:00 A.M. shift, which began on February 15, 1986. Shortly after claimant came on duty, she entered a patient's room and observed that the patient was in "mitten restraints" which are soft restraints tying the patient's hands to the bed. From her observations, she concluded that the restraint was unnecessary for that patient at that time. She removed it. Some six or seven hours later she observed the patient in an agitated state and replaced the restraint, believing that the patient would hurt himself if she did not do so.

Under the hospital rules, generally only a staff nurse could authorize a nurse's aide to apply or remove restraints. In actual practice, however, the nurse's aides apparently used their own discretion in applying and removing restraints. In this particular instance claimant had not checked the log on starting her shift to determine whether a doctor had ordered

this particular restraint. In fact no doctor had done so. However, since the person on the previous shift had placed the patient in restraints, claimant assumed that the restraints were properly authorized. Claimant did not log her action. After she left for the day a relief nurse came on, checked the chart and found that there were no doctor's orders for restraint on that patient. Claimant was later interviewed about her actions and her employment was terminated.

Claimant then applied for unemployment insurance benefits. She was initially disqualified from receiving benefits because of her alleged misconduct. Claimant requested a hearing and an Administrative Law Judge (hereinafter ALJ) sustained the initial determination. Claimant appealed the ALJ's decision to the Unemployment Insurance Appeal Board. The Board overruled the prior determination and awarded benefits. The employer now appeals this decision.

The Board's factual determination that claimant's error in judgment did not rise to the level of misconduct is supported by substantial evidence and, thus, must be accepted (see, Matter of LaRocca [New York City Dept. of Transp.—Roberts], 59 NY2d 683, 686). The question of whether a claimant was discharged for misconduct is a question of fact for the Board (Matter of Beykirch [Roberts], 125 AD2d 857). Notably, not every violation of an employer's rule, whether express or implied, constitutes misconduct, and while actions that display inefficiency, negligence or bad judgment may provide valid causes for discharging an employee, they do not automatically render a claimant ineligible for benefits (see, Matter of Lackey [Centro Parking—Ross], 81 AD2d 955, 956).

Here, the testimony of claimant and a former supervisor of nurses demonstrated that it was common practice for the nurse's aides to exercise their own independent judgment concerning the use of restraints. Significantly, the Board found claimant's assumption that restraints had been ordered by a physician to be reasonable. While the Board also found that claimant's failure to check and write in the patient log were regrettable errors, it nonetheless concluded that claimant's actions were, in general, motivated by a genuine concern for the welfare of her patients. In addition, the Board found it significant that claimant had never been admonished in the past for any infractions of the employer's rules. Consequently, we find that the Board's decision was supported by substantial evidence and should be affirmed.

Decision affirmed, without costs. Mahoney, P. J., Kane, Weiss, Mikoll and Harvey, JJ., concur.